**WESTERN GEOPHYSICAL COMPANY OF AMERICA, Inc., Plaintiff,**

v.

**BOLT ASSOCIATES, INC., Defendant and Third-Party Plaintiff,**

v.

**LITTON INDUSTRIES, INC., Third-Party Defendant.**

Civ. No. 11868.

United States District Court
D. Connecticut.

June 27, 1969.

William J. Doyle, Wiggin & Dana, New Haven, Conn., for plaintiff and third-party defendant.

Roland T. Bryan, Robertson, Bryan, Parmelee & Johnson, Stamford, Conn., for defendant and third-party plaintiff.

BLUMENFELD, District Judge.

RULING ON PLAINTIFF AND THIRD-PARTY DEFENDANT'S MOTIONS FOR JUDGMENT ON THE PLEADINGS AND FOR SUMMARY JUDGMENT WITH RESPECT TO ANTITRUST DEFENSES

This is a civil action for breach of two agreements between plaintiff Western Geophysical Company, a Delaware corporation with its principal place of business in California, and defendant Bolt Associates, a Connecticut corporation with its principal place of business in this state. Defendant pleads several defenses and counterclaims against plaintiff and against Litton Industries, a Maryland corporation with its principal place of business in California. Western and Litton now move for summary judgment and judgment on the pleadings with respect to Bolt's antitrust defenses and antitrust counterclaims. At the hearing, it developed that additional affidavits were necessary in order for the

sufficiency of the antitrust counterclaims to be decided, and additional time was granted the parties to obtain them. However, the parties agreed that the decision on the antitrust defenses need not be delayed. This memorandum deals only with the antitrust defenses.

The subject of the first cause of action is an agreement of September 14, 1962, under which plaintiff obtained the right to acquire an exclusive license to use a pneumatic acoustical repeater device (PAR), for use in exploration for natural resources under the sea bottom, having a pressure-chamber volume of 10 to 200 cubic inches, and the right to acquire an option for a second exclusive license to use a PAR with a volume in excess of 200 cubic inches should one be successfully developed. The subject of the second cause of action is an agreement of April 16, 1963, which is the "exclusive license agreement" for the 10-to-200 cubic inch PAR. That agreement contains provisions allowing plaintiff to sublicense the PAR and keep 50% of the royalties paid by the sublicensees to defendant through plaintiff. The license has a provision requiring plaintiff to use its best efforts to promote use of the PAR by government and nonprofit institutions for the first two years, and thereafter by all possible sublicensees.[1]

Paragraphs 29 and 35 of defendant's answer assert antitrust defenses to the two causes of action. In almost identical wording, they allege that the PAR is a "unique and novel" device, that the relevant market is the field of "off-shore, sub-bottom exploration," that plaintiff at the time of the agreement occupied a "predominant" position in that market—greater than 50%, and that plaintiff continues to be at least a "large competitor." Therefore, enforcing the contracts so as to grant plaintiff an exclusive license would aid plaintiff in violating the antitrust laws in that plaintiff's obtaining the license was (i) part of an attempt to monopolize, (ii) part of an illegal combination or conspiracy to monopolize with third-party defendant and unknown others, and (iii) an illegal acquisition of an asset the effect of which would be to substantially lessen competition or tend to create a monopoly in the relevant market.

██ Plaintiff argues that these antitrust defenses are insufficient as a matter of law. It first asserts that the allegations are defective for failure to allege sufficient facts in support of the conclusions. However, antitrust pleadings need not be in a particular technical form as long as they present "a short and plain statement of the claim showing that the pleader is entitled to relief" as required by Fed.R.Civ.P. 8. This is particularly true in a case such as this where there have already been several pre-trial conferences and extensive discovery has been taken. *See* Nagler v. Admiral Corp., 248 F.2d 319 (2d Cir. 1957). It is true that there must be more than mere assertions that the antitrust laws have been violated, *see* Klebanow v. New York Produce Exch., 344 F.2d 294, 299 (2d Cir. 1965), and that paragraphs 29 and 35 taken in isolation seem a bit conclusory. However, the answer as a whole gives adequate notice of defendant's claims and conforms to the requirements of Rule 8. To make defendant go through the motions of amendment on the basis of nice technicalities at this late stage of the litigation would be a needless exercise.

The heart of the motions is the argument that the defenses are legally insufficient under the doctrine of Kelly v. Kosuga, 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959). In that case plaintiff sued defendant seeking to recover payment of the purchase price of a quantity of onions. The defendant alleged that the contract of sale was made pursuant to an agreement to restrain trade: plaintiff and others with substantial control over the onion market had threatened to deliver large quantities of onions on the futures exchange and,

---

1. *See* 285 F.Supp. (D.Conn.1968) for Ruling on Motion for Partial Summary Judgment.

therefore, depress the price unless defendant and others purchased a large quantity of these onions. Both sides agreed not to deliver any of the onions on the futures market that season, the purpose of this agreement being to create a false market condition and thereby fix the price of onions. The defendant accepted some of the onions, but defaulted on the rest. The lower court entered judgment for the plaintiff and struck the antitrust defense.

The Supreme Court affirmed. It stated, "As a defense to an action based on contract, the plea of illegality based on violation of the Sherman Act has not met with much favor in this Court. This has been notably the case where the plea has been made by a purchaser in an action to recover from him the agreed price of goods sold." *Id.* at 518, 79 S.Ct. at 431. It went on, "If the defense of illegality is to be allowed as a collateral method of enforcement of the antitrust laws * * * it must be said that his [defendant's] theory creates a very strange class of private attorneys general." *Id.* at 520, 79 S.Ct. at 431.

The Court noted that in limited situations the antitrust defense is allowed. The Court explained its earlier case, Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 29 S. Ct. 280, 53 L.Ed. 486 (1909), allowing the defense. It explained that to give judgment in that case for an excessive purchase price fixed by members of a pool whose agent was seeking to recover that price would make the courts a party to the violation, stating: "The scope of the defense of illegality under the Sherman Act goes no further. * * * Past the point where the judgment of the Court would itself be enforcing the precise conduct made unlawful by the Act, the courts are to be guided by the overriding general policy, as Mr. Justice Holmes put it, 'of preventing people from getting other people's property for nothing when they purport to be buying it.'" 358 U.S. at 520–521, 79 S.Ct. at 432. Holding the case before it as outside the scope of the antitrust defense, the Court stated that "while the nondelivery agreement between the parties could not be enforced by a court, if its unlawful character under the Sherman Act be assumed, it can hardly be said to enforce a violation of the Act to give legal effect to a completed sale of onions at a fair price. * * * [W]e do not think it inappropriate or violative of the intent of the parties to give it effect even though it furnished the occasion for a restrictive agreement of the sort here in question." *Id.* at 521, 79 S.Ct. at 432.

Summing up the cases, "the Court will not let an alleged antitrust violation become the source of a defense in a private contract action unless to not do so would give direct sanction to an illegal restraint." ABA, Antitrust Developments 1955–1968, at 308.

The question here is on which side of the line this case falls. Plaintiff, citing language in Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 755, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947), argues that because the contracts in question are "not intrinsically illegal," enforcing them would not be tantamount to a court sanctioning illegal activity. But the question is not determined by confining judicial scrutiny to the four corners of the agreement in question, for, as the Court in *Bruce's Juices* stated, the question is whether the agreement "has as its object and effect accomplishment of illegal ends which would be consummated by the judgment sought * * *." *Id.*

Here, the agreements in issue purport to give plaintiff an "exclusive" license. However, after two years, the license becomes in a sense nonexclusive, for plaintiff must take active steps to sublicense. But it can retain one half of the royalties paid by the sublicensees, and therefore may enjoy a substantial competitive advantage over its competitors. *Cf.* LaPeyre v. FTC, 366 F.2d 117 (5th Cir. 1966). Therefore, if the allegations of defendant are proven, it may well be that the license agreement is one means by which plaintiff seeks

to gain a monopoly. There is authority for the proposition that an exclusive license is an "asset" for the purposes of section 7 of the Clayton Act. United States v. Columbia Pictures Corp., 189 F.Supp. 153 (S.D.N.Y.1960). Therefore, if defendant can prove that the commission obtained as consideration for obtaining sublicenses will so operate as to cause the requisite anticompetitive effect, to enforce that agreement would directly aid a violation of section 7.

It may be that defendant will be unable to support this theory by adequate proof. But it cannot be said at this stage that the allegations are deficient as a matter of law. If they are true, the "illegal ends * * * would be consummated by the judgment sought * * *," Bruce's Juices, Inc. v. American Can Co., *supra,* 330 U.S. at 755, 67 S.Ct. at 1020, and the court would be giving "direct sanction to an illegal restraint," ABA, *supra* at 308.

With respect to the antitrust defenses, the motions are denied.[2]

---

2. This ruling has been modified in part by the one which follows.