WESTERN GEOPHYSICAL COMPANY OF AMERICA, INC., Plaintiff-Appellee,

v.

BOLT ASSOCIATES, INC., Defendant-Appellant.

BOLT ASSOCIATES, INC., Third-Party-Plaintiff-Appellant,

v.

LITTON INDUSTRIES, INC., Third-Party-Defendant-Appellee.

Docket 71–1061.

United States Court of Appeals, Second Circuit.

Motion Argued Feb. 8, 1971.

Decided March 4, 1971.

766

Roland T. Bryan, Stamford, Conn. (Bryan, Parmelee, Johnson & Bollinger, Haynes N. Johnson and Prescott W. May, Stamford, Conn., and Joseph L. Lazaroff, Boston, Mass., of counsel), for defendant.

Shaun S. Sullivan, New Haven, Conn. (Wiggin & Dana, William J. Doyle, New Haven, Conn., of counsel), for plaintiff and third party defendant.

Before WATERMAN and FRIENDLY, Circuit Judges, and McLEAN, District Judge.*

FRIENDLY, Circuit Judge:

Plaintiff, Western Geophysical Company of America, Inc. ("Geophysical"),

* Of the District Court for the Southern District of New York, sitting by designation.

and its parent, Litton Industries, Inc. ("Litton"), third party defendant, move to dismiss an appeal by defendant-third party plaintiff, Bolt Associates, Inc. ("Bolt"), from an interlocutory order of Judge Blumenfeld in the District Court for Connecticut.

The original complaint, filed in March 1967, asserted two causes of action.[1] They arose out of alleged breaches by Bolt of two agreements dated September 14, 1962, and April 16, 1963, respectively. By virtue of the September 14 agreement and three $2,500 payments made pursuant thereto, Geophysical was given the option, upon further payments of $25,000, to enter into two exclusive licensing agreements with Bolt. The first, entered into on April 16, 1963 with a concurrent payment of $25,000, gave Geophysical the exclusive right "to use, as a sound source for off-shore sub-bottom exploration, certain pneumatic acoustical repeater devices having a pressure chamber volume in the size range from ten to two hundred cubic inches." The second exclusive license was to relate "to any improvements, designs, or developments and inventions relating to pneumatic acoustical repeater devices having a pressure chamber volume greater than 200 cubic inches or to fueled pneumatic acoustical repeaters for use as a sound source for off-shore sub-botton exploration." Broadly speaking, royalty income generated by Geophysical's sublicensing activities and imputed royalty income from Geophysical's own use of the devices was to be shared on a 50–50 basis.

The first cause of action alleged that, without informing Geophysical that it had made any improvements in the size range greater than 200 cubic inches, Bolt had sold or leased such devices to others, had represented that it was prepared to grant licenses to others covering devices within the terms of the second license option, and had refused to enter into the second exclusive license agreement with Geophysical. The second cause of action asserted that Bolt had wrongfully terminated the exclusive license agreement of April 16, 1963, and had sold or leased devices subject to that agreement to others. Alleging that its remedies at law were inadequate due to the uniqueness of the devices, Geophysical sought orders decreeing that the basic agreement of September 14, 1962, and the exclusive license of April 16, 1963, were in full force and effect, enjoining Bolt from granting any rights in derogation of Geophysical's rights under the latter, directing Bolt to enter into the second exclusive license, requiring specific performance of the two agreements in many respects unnecessary to detail, and directing an accounting for profits realized by Bolt's alleged breaches of contract or awarding "as an alternative to the relief above requested, damages in the amount of $950,000.00."

Bolt filed an answer presenting various defenses and also five counterclaims against Geophysical and Litton. The second, third and fourth counterclaims relied on the antitrust laws. The second counterclaim asserted that the actions of Geophysical and Litton were an attempt to monopolize and a combination and conspiracy forbidden by § 2 of the Sherman Act and that their acquisition of exclusive rights to Bolt's unique and novel invention would violate § 7 of the Clayton Act. The third and fourth counterclaims alleged a conspiracy for a group boycott of Bolt and to suppress use of Bolt's invention, in violation of § 2 of the Sherman Act. In these counterclaims Bolt asked, *inter alia*, that the court declare the agreements unenforceable, enjoin Geophysical and Litton from attempting to enforce them or from engaging in unlicensed use of Bolt's devices, and award Bolt damages of $1,000,000.00, to be trebled. Similar alleged violations of the antitrust laws were also included in Bolt's defenses.

Geophysical and Litton moved for judgment on the pleadings and for summary judgment with respect to the anti-

---

1. Federal jurisdiction was predicated on diverse citizenship.

trust defenses and counterclaims. The court denied the motions insofar as the defenses were concerned, with leave to the parties to submit additional affidavits in respect of the counterclaims, see 305 F.Supp. 1248 (D.Conn.1969). In a later opinion, 305 F.Supp. 1251 (D. Conn.1969), the court adhered to its ruling with respect to the Sherman Act defenses and also upheld the third and fourth counterclaims. It reached a different conclusion with respect to the claimed violation of § 7 of the Clayton Act. Assuming in Bolt's favor that "a single acquisition of an exclusive license is within the purview of the act," it ruled that Geophysical's obligation to promote worldwide licensing made the license itself pro-competitive and that any suppression of the invention by Geophysical and Litton would stem not from the acquisition of the asset, to which § 7 is directed, but from breach of contract and misuse of an asset already acquired. The court summarized its conclusion as follows, 305 F.Supp. at 1256:

> The motions of plaintiff and third-party defendant for summary judgment with respect to defendant's counterclaims three and four are denied. With respect to that part of counterclaim number two which invokes Clayton Act Section 7, the motions are granted; with respect to the rest of counterclaim number two (that part invoking Sherman Act Section 2), the motions are denied.[2]

After various unsuccessful maneuvers by Bolt designed to produce an order appealable by virtue of F.R.Civ.P. 54(b) or 28 U.S.C. § 1292(b), which need not be here detailed, and an order by the judge separating for later trial the patent issues raised by the fifth counterclaim, 50 F.R.D. 193 (D.Conn.1970), Geophysical, with leave of the court and the defendant's consent, served an · amended complaint. Although Bolt conclusorily asserts that this constituted a material change, it does not appear to us to be so.

Bolt answered, as required by F.R.Civ.P. 15(a). For our purposes the important change in the answer to the amended complaint was the addition of a sixth counterclaim. This alleged a plan by Geophysical in conjunction with Litton "to continue and further plaintiff's dominance of the off-shore, sub-bottom exploration industry by seeking to control and controlling the new significant non-dynamite sound sources, to suppress their use, and to keep them" from the rest of the industry. After developing this theme in detail, Bolt alleged that the plan and the actions pursuant thereto violated §§ 1 and 2 of the Sherman Act and § 7 of the Clayton Act and prayed for damages of $1,000,000, to be trebled, and an injunction against plaintiffs' attempting to enforce any of the rights they claimed under the agreements and against their pursuing various courses of action which would have anticompetitive effects. Finally, Bolt sought a direction that plaintiffs be required to divest themselves of all rights in non-dynamite sound sources. In contrast to the original answer, the amended one demanded "trial by jury of all the issues in this action that are properly triable by a jury."

Geophysical and Litton responded with a motion which, so far as is here pertinent, sought to strike the jury demand as not having been served within the time required by F.R.Civ.P. 38(b) and all defenses and counterclaims based on § 7 of the Clayton Act "on the ground that this Court has already ruled that such defenses and counterclaims are insufficient as a matter of law." Judge Blumenfeld disposed of this motion and dealt with other matters in a pre-trial order filed December 29, 1970. Holding that nothing in the amended complaint furnished a basis for the late jury demand, he granted the motion to strike that demand insofar as it related to issues presented by the amended complaint and, inferentially, by the first

---

2. Apparently the court correspondingly modified its earlier ruling with respect to the antitrust defenses. See 305 F.Supp. at 1251 n. 2, 1253 n. 2.

five counterclaims. On the other hand, he denied the motion insofar as it sought to strike the jury demand with respect to issues raised by the newly pleaded sixth counterclaim. Faced with the prospect of a non-jury trial on the issues raised by the amended complaint and the first five counterclaims and of a jury trial on the issues raised by the sixth, and recognizing the need for additional, perhaps extensive, discovery with respect to the latter, he deferred discovery and trial of the sixth counterclaim until trial of the other non-patent claims and counterclaims had been completed. While he in form denied the motion "to strike the Clayton Act § 7 pleadings," he stated that "this court's previous rulings relating to the defendant's answer insofar as it asserted defenses and/or counterclaims based upon alleged violations of the Clayton Act § 7 (15 U.S.C. § 18), 305 F.Supp. 1248, 1251 (D.Conn.1969), are equally applicable to the defendant's amended answer." Trial was to commence on March 9, 1971. Bolt's notice of appeal states generally that it is "from the Court's Order ruling on plaintiff's Motion to Strike, entered in this action on December 29, 1970."

■ To take the easiest point first, it is altogether plain that the striking of Bolt's jury demand with respect to the amended complaint and the repleaded counterclaims as untimely was neither a "final decision" within 28 U.S.C. § 1291 nor an order granting or denying an injunction within § 1292(a) (1). The proper method for seeking review of such an order is mandamus, see Ex parte Simons, 247 U.S. 231, 38 S.Ct. 497, 62 L.Ed. 1094 (1918); Ex parte Skinner & Eddy Corp., 265 U.S. 86, 44 S.Ct. 446, 68 L.Ed. 912 (1924); Bereslavsky v. Caffey, 161 F.2d 499 (2 Cir.), cert. denied, 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355 (1947); Bereslavsky v. Kloeb, 162 F.2d 862 (6 Cir.), cert. denied, 332 U.S. 816, 68 S.Ct. 156, 92 L.Ed. 393 (1947).

We have indicated that in an appropriate case, where a litigant has mistakenly sought to obtain by appeal relief that could properly be given only on mandamus, we might consider the appeal as a request for leave to file a petition for mandamus, International Prods. Corp. v. Koons, 325 F.2d 403, 407 (2 Cir. 1963). But that principle does not assist Bolt. If Bolt had filed a petition for mandamus with respect to this portion of the order, we would have denied it without calling for an answer. See F.R.A.P. 21(b). The authorities are clear that when a party has waived the right to a jury trial with respect to the original complaint and answer by failing to make a timely demand, amendments of the pleadings that do not change the issues do not revive this right, Roth v. Hyer, 142 F.2d 227 (5 Cir.), cert. denied, 323 U.S. 712, 65 S.Ct. 38, 89 L.Ed. 573 (1944); Moore v. United States, 196 F. 2d 906, 908 (5 Cir. 1952) (dictum); Reeves v. Pennsylvania R. R. Co., 9 F.R. D. 487 (D.Del.1949); 5 Moore, Federal Practice ¶38.41 (2d ed. 1969). As already indicated, we are unable to perceive that the amended complaint or the amended answer, apart from the newly added sixth counterclaim, in any way changed the issues raised by the original pleadings.

■ We turn next to Bolt's contention that so much of the order as struck the portions of the second and sixth counterclaims grounded upon § 7 of the Clayton Act was appealable as an interlocutory order refusing an injunction within 28 U.S.C. § 1292(a) (1), a section whose history is traced in Stewart-Warner Corp. v. Westinghouse Electric Corp., 325 F.2d 822, 829–830 (2 Cir. 1963) (dissenting opinion), cert. denied sub nom. Stewart-Warner Corp. v. Canadian Westinghouse Co., 376 U.S. 944, 84 S.Ct. 800, 11 L.Ed.2d 767 (1964). If the issue had not previously arisen, something could be said for the proposition that when a complaint and answer

present several claims, an order dismissing one of them which seeks an injunction, either on the merits or for lack of jurisdiction or improper venue, is not interlocutory but rather final with respect to that claim and is subject to appeal only if the district court properly certifies its action as a final judgment under F.R.Civ.P. 54(b). However, there are weighty arguments on the other side, and the division among the courts was settled in favor of appealability as from an interlocutory order refusing an injunction, prior to adoption of the Rules of Civil Procedure, in General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 53 S.Ct. 202, 77 L.Ed. 408 (1932). We applied that principle, after adoption of the rules, in Cutting Room Appliances Corp. v. Empire Cutting Machine Co., 186 F.2d 997 (2 Cir. 1951), in Telechron, Inc. v. Parissi, 197 F.2d 757 (2 Cir. 1952), and, in the writer's view improperly, in Stewart-Warner Corp. v. Westinghouse Electric Corp., *supra*, 325 F.2d 822.[3] Hence, if Bolt had asserted only one counterclaim seeking injunctive relief and this had been based solely on § 7 of the Clayton Act, an order striking the counterclaim for failing to state a claim on which relief could be granted or rendering summary judgment against Bolt would have been appealable under 28 U.S.C. § 1292(a) (1).

Bolt's difficulty is that its appeal does not mirror the hypothetical just stated. The second and sixth counterclaims were

only two of four which sought injunctive relief under the antitrust laws, and § 7 of the Clayton Act was only one of several bases for relief asserted in these two counterclaims. The prayers for injunctive relief in counterclaims Two, Three, and Four are virtually identical. Although the Sixth counterclaim's injunctive prayer is somewhat broader than that stated in the others, it—like the Second counterclaim— rests upon alleged violations of the Sherman Act as well as of Clayton Act § 7. Hence, the decision of a divided court in Glenmore v. Ahern, 276 F.2d 525, 545 (2 Cir.), cert. denied sub nom. Tri-Continental Financial Corp. v. Glenmore, 362 U.S. 964, 80 S.Ct. 877, 4 L.Ed.2d 878 (1960), does not mandate appellate jurisdiction here. In *Glenmore*, the district court had granted defendant's motion to dismiss the sixth count of a multi-count complaint. The dismissed count had sought the same injunctive relief as several other counts but on "a distinct legal theory," indeed, a distinct claim—failure to obtain I.C.C. authorization for significant changes in the rights and privileges of the holders of railroad preferred stock as required by § 20(a) of the Interstate Commerce Act, cf. Original Ballet Russe, Ltd. v. Ballet Theatre, Inc., 133 F.2d 187, 189 (2 Cir. 1943). Although other counts seeking an injunction on non-statutory grounds remained undetermined, we held the dismissal of the sixth count to be appealable under § 1292(a) (1).[4] Here, by

---

3. Professors Moore and Ward state that *Stewart-Warner* can be reconciled with our previous decision in National Machinery Co. v. Waterbury Farrel Foundry & Mach. Co., 290 F.2d 527 (2 Cir. 1961), "only by assuming that the majority viewed the appeal as one from an order dismissing a compulsory counterclaim for improper venue." 9 Moore's Fed. Practice ¶110.20[1] n. 33 (2 ed. 1970). But see 325 F.2d at 828 & n. 2.

4. Since the district court had both denied plaintiff's motion for summary judgment on the sixth count and granted defendant's motion to dismiss it, large portions of the various opinions in that case were

devoted to the issue, then hotly controverted in this court, whether denial of a plaintiff's motion for summary judgment seeking an injunction was appealable under 28 U.S.C. § 1292(a) (1). The discussion was rather unnecessary since the district court had dismissed the count. See 276 F.2d at 546, 555. The overruling of our holding in Federal Glass Co. v. Loshin, 217 F.2d 936 (2 Cir. 1954), with respect to the appealability of orders refusing summary judgment for injunctions, by Chappell & Co. v. Frankel, 367 F.2d 197, 200 (2 Cir. 1966), and the disapproval of *Loshin* in Switzerland Cheese Ass'n, Inc. v. E. Horne's Market, Inc., 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d

contrast, no single counterclaim of Bolt's has been dismissed in its entirety. Bolt may still secure the full extent of injunctive relief prayed for in each claim that it has stated. Cf. Cott Beverage Corp. v. Canada Dry Ginger Ale, Inc., 243 F.2d 795 (2 Cir. 1957); Backus Plywood Corp. v. Commercial Decal, Inc., 317 F.2d 339, 341 (2 Cir.), cert. denied, 375 U.S. 879, 84 S.Ct. 146, 11 L.Ed.2d 110 (1963); Rabekoff v. Lazere & Co., 323 F.2d 865 (2 Cir. 1963); McNellis v. Merchants Nat. Bank & Trust Co., 385 F.2d 916 (2 Cir. 1967), all dealing with the related problem under F.R.Civ.P. 54(b). Under these circumstances, we cannot see that the judge's striking the references to § 7 of the Clayton Act differed essentially from the exclusion of evidence or refusal to hear argument relating solely to violation of that section.[5]

We come finally to Bolt's appeal from that portion of the pre-trial order which postponed the jury trial of the sixth counterclaim until the non-patent issues raised by the amended complaint and the other counterclaims had been determined by the judge. Bolt does not seriously urge that this direction of the order of trial was a denial of the injunction prayed in the sixth counterclaim; its contention rather is that the order stayed the trial of what it considers a counterclaim "at law," as evidenced by the judge's refusal to strike the jury demand, and thus was the grant of an injunction within Enelow v. New York Life Ins. Co., 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935) and Ettelson v. Metropolitan Life Ins. Co., 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). Both those cases, however, were actions commenced "at law" where the district court had directed the prior trial of an equita-

ble defense in the former case and of an equitable counterclaim in the latter; the theory was that the law judge had donned a chancellor's robes and enjoined himself from acting on the law claim.

■■ In the reverse situation, where the action begins as one "in equity" and the court decides to try the equitable claims in advance of a legal counterclaim, the judge is considered not to have enjoined trial of the latter but merely to have exercised his power to direct the order of trial, City of Morgantown v. Royal Ins. Co., 337 U.S. 254, 69 S.Ct. 1067, 93 L.Ed. 1347 (1949). See also Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955). But see Travel Consultants, Inc. v. Travel Management Corp., 125 U.S.App.D.C. 108, 367 F.2d 334 (1966), cert. denied, 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 785 (1967). This was the situation here. Although the complaint sought declaratory relief, 28 U.S.C. §§ 2201–02, and included an alternative prayer for damages, the demands for both negative and mandatory injunctions against Bolt to compel specific performance of the contracts made it essentially a suit in equity. See Schine v. Schine, 367 F.2d 685 (2 Cir. 1966).

■■ This, however, is not quite the end of the road. It may be that even when the complaint is as clearly equitable as here, if the defendant pleads a counterclaim "at law" which involves issues of fact and law common with the complaint and answer and seasonably demands a jury trial of the counterclaim prior to the trial of the issues raised in the complaint, the court should generally exercise its discretion to grant the re-

---

23 (1966), thus do not, as appellees contend, overrule the *Glenmore* holding concerning the appealability of an order dismissing a count for an injunction making a legally distinct claim, although it may be appropriate for us to give further consideration to that issue should it again arise.

5. In the light of our holding of non-appealability, we find it unnecessary to consider

appellees' suggestion that the appeal from the striking of the Clayton Act allegations was untimely in that this action by the judge was merely a reaffirmation of his ruling of October 25, 1969, *supra*, 305 F.Supp. 1251. In any event this suggestion could apply only to the second counterclaim.

quest, although neither of the oft-cited Supreme Court decisions, Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959); Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S. Ct. 894, 8 L.Ed.2d 44 (1962), goes quite that far and we do not here so decide. See Robine v. Ryan, 310 F.2d 797 (2 Cir. 1962). While, for the reasons indicated, an order postponing trial of such a counterclaim would not be the grant of an injunction under 28 U.S.C. § 1292(a) (1), abuse of discretion in effectively denying the constitutional right of jury trial would be correctable by mandamus, as was done in the cases cited. And, as indicated above, we will treat an attempted appeal as a request for leave to file such a petition in appropriate instances. However, it is apparent there was no abuse of discretion here. Even if we assume in Bolt's favor that the sixth counterclaim was truly founded on "a separate transaction or occurrence," F.R.Civ.P. 10(b), and was not merely a more elaborate and updated version of what had been pleaded in the second counterclaim long ago, it was filed three and a half years after the suit was brought and Bolt had failed to demand a jury trial on the antitrust issues raised in its second, third and fourth counterclaims, after extensive discovery had been had on the issues raised by the complaint, the answer and the first five counterclaims, and a month after the date for the pre-trial conference had been set. Bolt has not challenged the judge's statement that further extensive discovery on the sixth counterclaim will be required. Under these circumstances we perceive no abuse of discretion in his directing that, at long last, Geophysical should have its day in court, even if this should mean that findings by him may determine issues relating to the recently pleaded sixth counterclaim on which Bolt is to be afforded a jury trial.

The motion to dismiss the appeal is granted. Insofar as the appeal is deemed a motion for leave to petition for mandamus, it is denied.