## BERISFORD CAPITAL CORPORATION, Plaintiff,

v.

## SYNCOM CORPORATION, Foothill Capital Corporation, Martin Panich and Kenneth Thenen, Defendants.

No. 86 Civ. 2965 (MP).

United States District Court, S.D. New York.

Jan. 16, 1987.

Baer Marks & Upham, New York City by Barry J. Mandel, Allan Dinkoff, Terri J. Combs, for plaintiff.

Otterbourg, Steindler, Houston & Rosen, New York City by Kurt J. Wolff, Lloyd M. Green, Diane B. Kaplan, Peter Feldman, for defendant Foothill Capital Corp.

## OPINION

MILTON POLLACK, Senior District Judge.

Defendant Foothill Capital Corporation has moved to strike the demand for a jury made by plaintiff Berisford Capital Corporation. Foothill urges that, pursuant to Rule 38(d) of the Federal Rules of Civil Procedure, Berisford waived its right to a jury on all issues raised in its original complaint when it failed to make its demand within 10 days of the last pleading directed to that complaint. Berisford urges that its amended complaint raised issues not addressed in the original complaint such as to entitle it to assert its right to a jury on those issues. For the reasons given below, plaintiff's jury demand will be struck.

## I. INTRODUCTION

In late 1984, Syncom Corporation entered negotiations with Farm House Foods Corporation to acquire four subsidiaries of Farm House: Hancock-Nelson Mercantile Company ("Hancock"), Carpenter Cook Company, Roberts Farm House Foods, and Farm House Wholesale Corporation. Syncom conducted its negotiations through its two principal officers: Martin Panich, Chairman of the Board and Chief Executive Officer; and Kenneth Thenen, Vice Chairman and Chief Operating Officer.

The negotiations were successful; Syncom formed a subsidiary named Coordinated to make the acquisitions. Coordinated would acquire all the stock of the Farm House subsidiaries in two stages. First, on January 17, 1985, Coordinated would acquire the stock of Hancock for $9.2 million. Then, on April 19, 1985, Coordinated would acquire the other three companies and merge them into Hancock.

Financing for the first stage was provided primarily through a credit line from Foothill to Hancock. Berisford alleges that Hancock borrowed $7 million from Foothill and then made these funds available to Coordinated, which used them to pay off the bulk of the $9.2 million purchase price to Farm House.

In the period between the two closings, Syncom sought additional financing. In this regard, Panich and Thenen contacted Berisford. Panich and Thenen allegedly stressed to Berisford that Foothill, a respected capital corporation, had already extended a large amount of cash to Syncom and was prepared to extend further credit, owing to Foothill's confidence in the ultimate success of the entire acquisition.

At this time, a meeting occurred between Joseph J. Briganti, a Senior Vice President of Foothill, and two executives of Berisford. At this meeting, Briganti allegedly made numerous representations to the Berisford executives which induced them to approve a loan of $2 million from Berisford to Syncom in connection with the second stage of the acquisition of the Farm House subsidiaries.

Briganti allegedly told Berisford that he had had good experiences with Panich and Thenen over his long collaboration with them and that there had been no problems with Foothill's previous loans to Syncom. Briganti allegedly stated that Foothill knew how to monitor such situations and that the Farm House subsidiaries were adequately capitalized to satisfy any possible defaults from Foothill's or Berisford's loans.

Berisford alleges that Briganti knew that these statements were false in that Briganti knew that Panich and Thenen were untrustworthy and had "been involved with" bankrupt companies previously. (Amended complaint, ¶ 39). Plaintiff maintains that Foothill knew that the acquisitions were doomed and was only attempting to infuse extra capital from Berisford in order to prop up the companies long enough to get its own money out. Further, Berisford alleges that Briganti accepted personal favors from Panich and Thenen which induced him to overstate the cash position of Syncom and the Farm House subsidiaries, in order to induce Berisford to make the loan.

As partial consideration for the loan, Syncom granted Berisford warrants on 1,160,000 shares of Syncom common stock. Syncom also pledged the capital stock of most of its subsidiaries as security for the loan and gave Berisford a second lien (junior to that of Foothill) on the assets of Hancock and the other Farm House subsidiaries to be acquired by Coordinated. Lastly, Berisford and Foothill executed an "Intercreditor Agreement" obligating Foothill to notify Berisford of any default by Hancock or of any other material change in the creditors' agreement with Syncom.

Berisford alleges that Panich and Thenen diverted income from the new acquisitions to personal uses. Berisford further states that Foothill used its influence over Syncom to cause it to divert capital from the new acquisitions to other Syncom subsidiaries which were deeply indebted to Foothill. Berisford claims that, in late 1985,

Foothill virtually "liquidated" Hancock by calling in $10 million in loans, leading to Hancock's entrance into Chapter 11 proceedings in January 1986. Syncom defaulted on Berisford's loan. Berisford sold off stock which Syncom had pledged to it, but claims that the value was only approximately $20,000.

Berisford filed suit on April 11, 1986, naming Syncom, Coordinated, Foothill, Farm House, Panich and Thenen as defendants. Various cross-claims and counterclaims, unrelated to Berisford's present motion, were filed in response. The last pleading directed at the original complaint was filed on June 27, 1986. On August 21, 1986, plaintiff received permission and did so file an amended complaint. This complaint named only Syncom, Foothill, Panich and Thenen as defendants. Amended answers, cross-claims and counterclaims followed again, the last of these being filed on September 16, 1986. On that day, pursuant to Rule 38, plaintiff first filed a demand for trial by jury. No other party has filed a jury demand at any point in the case.

## II. RULE 38 AND TRIAL BY JURY

Rule 38 provides in pertinent part:

(b) *Demand.* Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefor in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

(d) *Waiver.* The failure of a party to serve a demand as required by this rule and to file it as required by Rule 5(d) constitutes a waiver by him of trial by jury.

It must first be noted that Berisford's demand for a jury trial is untimely in relation to its original complaint. Plaintiff's time to file a timely jury demand ended ten days after the last pleading directed to the original complaint—i.e. in early July 1986. Plaintiff thereby waived its right to a jury trial on those claims. Plaintiff's demand, however, is timely as to the amended complaint because it was served within ten days of the last pleading directed to that complaint. The problem for the court is to determine whether the amendment of the complaint extended the time to demand a jury trial within the requirements of Rule 38.

The goal of Rule 38's requirement of a timely jury demand and, failing that, of automatic waiver, is to provide adequate notice to the parties of whether they will appear before a court or a jury. The time limits allow the parties to make that determination within ten days after the service of the last pleading directed to the issue on which a jury trial may be demanded. The parties may then rely on the Rule's explicit terms in presuming that the fact-finder will not thereafter change for the claims raised in the complaint. *Rosen v. Dick,* 639 F.2d 82, 87–88 (2d Cir.1980). Though notice and reliance are equitable concepts, the literal terms of the rule are the crucial guidelines for judging whether a party has had adequate notice of its jury right for a given claim before being deemed to have waived it by not demanding it. *Id.*

■ Berisford claims that it is entitled to a jury because its demand was timely as to the amended complaint even though not timely as to the original. The law of this Circuit is that "[i]f the original complaint is subsequently amended, the right to demand a jury trial is revived ... only if the amendment changes the issues." *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310 (2d Cir. 1973) (en banc); *Western Geophysical Co. of America, Inc. v. Bolt Associates, Inc.,* 440 F.2d 765, 769 (2d Cir.1971).

In attempting to firm up the concept of what an "issue" is in this context, the Second Circuit has observed that the term "means something more than the evidence offered and the legal theories pursued.... 'the presentation of a new *theory* [of recovery] does not constitute the presentation of a new *issue* on which a jury trial should be granted.'" *Rosen, supra,* at 94 (emphasis in original, citation omitted). This concept

is broad enough to encompass such notions as "the basic legal theory" and "the character of the suit". *Id.* at 96.

■ "Artful rephrasings" in the amended complaint will not serve to revive the jury right once waived. *Rosen, supra,* at 94. The right will only be revived if "the ultimate issue for decision is different." *Id.* (citation omitted). Lastly, and of particular relevance to the instant case, is the court's observation that

> "[W]hen the parties are the same before and after an amended pleading, it is difficult to show that a new issue has been raised. Usually, the initial jury demand (or waiver) will put the other parties on notice that a jury (or the court) will be trying 'all issues relating to [the] general area of dispute' " *Id.* at 96 (citation omitted).

Here, both Berisford and Foothill were parties to the case before and after the amended pleading. Thus, there is a presumption that they were on notice as to all issues "relating to the general area of dispute" raised in the original complaint when they failed to make a timely jury demand in response to that complaint.

■ In summary, a waiver of the jury right is final unless the amended complaint raises issues not fairly present in the original complaint. The court will look to the underlying essence of the two complaints to see if they differ, rather than focusing on the fine-tuning of legal theories or the artful sharpening of allegations.

## III. BERISFORD'S TWO COMPLAINTS

Plaintiff's original complaint contained 25 expository allegations, followed by six claims for relief, three of which applied to Foothill.[1] The first of these was an undifferentiated claim for fraud; the second claim was for equitable subordination of Foothill's claims on Hancock's assets to Berisford due to Foothill's alleged fraudulent and inequitable actions. The third claim against Foothill was for fraudulent conveyance.

The amended complaint contains 81 expository allegations, followed by eleven claims; eight of these apply to Foothill. The factual allegations of the complaint have a slightly different focus than those of the original. The amended complaint naturally omits most references to Farm House and Coordinated, which were dropped as defendants from the amended complaint. There is a greater amount of detail as to the negotiations between Foothill and Berisford, particularly as to the role of Briganti. Foothill's alleged "liquidation" of Hancock is also described more specifically than in the original complaint.

Of the eight claims against Foothill in the amended complaint, one, for common law fraud, is a carry-over from the first complaint. The other seven claims may be briefly listed: 1) Aiding and abetting Syncom's violation of § 10(b) of the Securities' Exchange Act of 1934; 2) Aiding and abetting Syncom's violation of § 12(2) of the Securities Act of 1933 (Both of these claims are in connection with the transfer of the Syncom common stock warrants which Berisford received in partial payment for its loan to Syncom); 3) Fraudulent concealment; 4) Another claim for common law fraud; 5) Breach of the Intercreditor Agreement; 6) Negligent misrepresentation; 7) Fraudulent conduct in violation of New York and Illinois business statutes.

Even a cursory review of the expanded allegations in the amended complaint reveals a single common focus. "Obviously, every amended pleading contains some new material. However, it does not necessarily follow that the issues have changed." *American Home Products v. Johnson & Johnson,* 111 F.R.D. 448, 450 (S.D.N.Y. 1986). To paraphrase the leading case on

---

1. In a pretrial conference, the court ordered that Berisford's claims be bifurcated. Berisford's claims against Foothill will be tried before plaintiff's other claims. Only claims against Foothill will be addressed by this Opinion.

point, the instant case involves and the original complaint raised, one basic issue as to Foothill: whether Foothill's statements concerning the abilities of Panich and Thenen and the cash position of Syncom and the Farm House subsidiaries, and Foothill's failure to disclose its subsequent actions in calling in loans to Hancock constituted a fraud upon Berisford such that Berisford reasonably relied on Foothill's misrepresentations and suffered damage therefrom. *See Lanza, supra,* at 1310. Whether the fraud is called common law fraud, securities fraud or fraudulent concealment, the "issue," for the purpose of Rule 38 is the same. *See id.*

The only count of the amended complaint which appears to sound other than in fraud is Berisford's claim for breach of the Intercreditor Agreement. However, even that claim, as described in the amended complaint, is based on Foothill's concealment of its "de facto declaration of [the] default" of Hancock due to Foothill's "wrongful liquidation" of that company. (Amended complaint, ¶ 111). The contract claim is simply an alternative legal theory which goes to the same underlying issue. *See Rosen, supra,* at 94.

## IV.  CONCLUSION

Fraud was alleged clearly and conclusively in the original complaint. Berisford was thus on notice that it had the period prescribed by Rule 38 to demand a jury. In failing to demand a jury within that time period, Berisford waived its right to a jury on the allegedly fraudulent conduct of Foothill in this case.

It is this court's view that the amended complaint does not change "the character of the suit," *see Rosen, supra,* at 96, but "merely clarified 'the same general issues'," *Lanza, supra,* at 1310 (citation omitted). The motion to strike plaintiff's belated demand for a jury trial is therefore granted.

So Ordered.