**RICHARDSON GREENSHIELDS SECURITIES, INC., Plaintiff,**

v.

**MUI–HIN LAU, Ho Sih Fong, Kau–Ying Lau, Ying Lup Lau and Wai Yai Chi, Defendants and Third–Party Plaintiffs,**

**YING TAK LAU, Additional Third–Party Plaintiff,**

v.

**Lavinia WU, Angelo Da Biero, George T. Hirai and Richard DiGiacomo, Third–Party Defendants.**

**Daniel LAU, Plaintiff,**

v.

**RICHARDSON GREENSHIELDS SECURITIES, INC., Defendant.**

**No. 84 CIV. 6134 (SWK).**

United States District Court, S.D. New York.

July 29, 1988.

Morgan, Lewis and Bockius, New York City by Peter G. McDonough, for plaintiff and third-party defendants.

Carey and Deinoff, New York City by Michael Q. Carey, for defendants and third-party plaintiffs.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Presently before this Court is plaintiff's motion (1) to strike the jury demand, (2) to dismiss certain counts of the counterclaims, the third-party complaint and the complaint brought by Daniel Lau ("Lau Complaint") pursuant to Federal Rule of Civil Procedure ("Rule") 9(b) and Rule 12(b)(6), (3) to order a more definite statements as to certain claims, (4) for summary judgment on certain counts of the Lau Complaint pursuant to Rule 56 and (5) for an order granting Rule 11 sanctions. Also before the Court are defendants' and third-party plaintiffs' cross-motions (1) for an order granting a jury trial pursuant to Rule 39(b), (2) for an order granting leave to amend the pleadings and (3) for leave to replead any claims dismissed without their consent.[1]

### Procedural Background

This action began in August, 1984, when Richardson Greenshields Securities, Inc. ("Richardson") brought this diversity action against the defendants seeking $167,-212.48, plus interest and attorneys' fees. Defendants allegedly owed this amount for deficiencies in their commodities futures trading accounts held at Richardson. Plaintiff successfully applied for and received an order of attachment against certain properties of defendants. *See Richardson Greenshields v. Lau,* 651 F.Supp. 929 (S.D.N.Y.1986) (granting preliminary injunction). A bench trial began on January 26, 1987, but was stayed after four days by the Court of Appeals.

Defendants had previously moved to amend their answer to assert counterclaims against plaintiff, to assert third party claims and to join Daniel Lau as a defendant and third party plaintiff. This Court denied the motion in a Memorandum Opin-ion and Order. *Richardson Greenshields v. Lau,* 113 F.R.D. 608 (S.D.N.Y.1986). The Court, pursuant to the Second Circuit's direction, *see* 825 F.2d 647 (2d Cir.1987), granted defendants permission to file an amended answer and third-party complaint in late 1987. These new pleadings asserted claims based on the Commodity Exchange Act, 7 U.S.C. § 4 *et seq.,* the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.,* and related common law claims. Daniel Lau subsequently filed a separate action against the third-party defendants and plaintiff, raising identical claims. The Court consolidated this action with the pending action, and now both are before the Court.

Richardson is a duly registered broker-dealer with its principal place of business in New York. The original defendants, Mui–Hin Lau, Ho Sih Fong, Kau–Ying Lau, Ying Lup Lau (a/k/a Michael Lau) and Wai Yau Chi, were all customers, at least nominally, of Richardson. Defendants contend that Ying Tak Lau (a/k/a Daniel Lau) was also a customer.[2] The Customers are citizens of various countries, including the United States, Canada and Hong Kong. The third-party defendants, Lavinia Wu, Angelo Da Biero, George Hirai and Richard DiGiacomo, all worked in various capacities for Richardson at times relevant to this action.[3]

### Factual Background

The following discussion is based exclusively on the amended answer and third-party complaint as way of background to the motions to dismiss.[4] In 1981, Lavinia Wu ("Wu") worked as a commodity broker for Prudential–Bache Securities, Inc. ("Bache") and supervised the opening of individual accounts at Bache for Mui–Hin Lau, Ho Sih Fong ("Fong") and Kau–Ying

---

**1.** Richardson Greenshields Securities, Inc. will be referred to as either "Richardson" or "plaintiff".

**2.** This group of individuals, comprising all of the original defendants and the third-party plaintiffs, including Daniel Lau, will be referred to as the "Customers".

**3.** These third-party defendants will be referred to as the "Brokers".

**4.** The allegations in the amended pleadings are deemed true for purposes of the motions to dismiss. *County of Suffolk v. LILCO,* 728 F.2d 52, 57 (2d Cir.1984). The Court will discuss the facts relevant to the jury demand motion and the summary judgment motion below.

Lau, and a joint account for Michael Lau and Wai Yau Chi. In December, 1982, Wu informed Michael and Daniel Lau that she was leaving Bache and moving to Richardson. The Customers allege that Wu induced Michael and Daniel Lau to transfer from Bache to Richardson money and securities in the Bache accounts by making a series of misrepresentations as to her abilities to trade on their behalf at Richardson. The two Laus, with the help of Wu, closed all the Bache accounts without the knowledge of Mui-Hin Lau, Ho Sih Fong, Kau-Ying Lau or Wai Yau Chi, and opened four accounts at Richardson: a joint account in the name of Michael Lau and Wai Yau Chi, and one account each in the name of the other individuals (the "Richardson accounts"). The Customers allege that the Brokers knew that neither Michael nor Daniel Lau had any authority from the other named account holders to open the accounts or to authorize trades in the account, though the Brokers led Michael and Daniel Lau to believe that they did have such authority. With the guidance of Wu, Michael and Daniel Lau prepared inaccurate customer account forms and signed papers without authority. Richardson and the Brokers allowed Daniel Lau to control trading in the accounts even though they had no financial information concerning him. Richardson and DiGiacomo, Da Biero and Wu allegedly allowed the accounts to be opened in this way, based on false information, in order to increase the commissions which could be earned.

Trading in the four Richardson accounts began in January, 1983, and ended in July, 1984. Wu, exercising discretionary control over the accounts, made purchases and sales of commodities futures contracts in gold, platinum, silver and copper futures. Though trading occurred frequently, the Customers allege that none of the them other than Michael and Daniel Lau had knowledge of the trading. Wu continued to trade, even though margin calls exceeded known assets and even though she knew that Michael Lau was borrowing money to

meet the margin calls. Alleged losses amounted to over two million, with commissions exceeding $55,000. Richardson liquidated the accounts in July, 1984 at a loss to the Customers.

## Discussion

### I. RICO

The RICO statute in question here, 18 U.S.C. § 1962(c), states:

> It shall be unlawful for any person employed by or associated with any enterprise ... to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity ..."

The statute defines "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity". 18 U.S.C. § 1961(4). The statute defines "person" as "any individual or entity capable of holding a legal or beneficial interest in property". *Id.* at § 1961(3). The Customers allege that Richardson and the Brokers formed an enterprise that operated to induce them to transfer their accounts fraudulently from Bache to Richardson and then to engage in a fraudulent scheme to churn the accounts.

### A. Defendants as "Enterprise" and "Person"

■ Plaintiff argues that the RICO claim [5] should be dismissed because Richardson and the Brokers are named as both the RICO enterprise and the RICO persons, citing *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed. 2d 776 (1986). In *Bennett,* the Second Circuit held that "under section 1962(c) a corporate entity may not be simultaneously the 'enterprise' and the 'person' who conducts the affairs of the enterprise through a pattern of racketeering activity." 770 F.2d at 315; *see also Anitora Travel, Inc. v. Lapian,* 677 F.Supp. 209, 219 (S.D.N.Y. 1988).

---

**5.** The Customers, including Daniel Lau, have alleged identical RICO claims against Richard-son and the individual Brokers.

Richardson's and the Brokers' argument is without merit. In the amended pleadings, the Customers allege that "RICHARDSON, WU, DA BIERO, HIRAI and DIGIACOMO associated in fact, although not a legal entity, formed and constituted an enterprise ..." The enterprise is thus comprised of a corporation and a number of individuals, and is thus distinguishable from the facts of *Bennett* and *Anitora*, in which the enterprise itself was named as a defendant. The Second Circuit has recently stated that "we see no reason why a single entity could not be both the RICO 'person' and one of a number of members of the RICO 'enterprise'. The definitions of these terms are intentionally broad." *Cullen v. Margiotta*, 811 F.2d 698, 729–30 (2d Cir.1987), *cert. denied sub nom. Nassau County Republican Committee,* ––– U.S. –––, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). The *Cullen* Court specifically explained that "though we rejected in *Bennett* the notion that an entity may be deemed 'associated with' only itself, there is neither a conceptual nor a doctrinal difficulty in positing an entity associated with a group of which it is but a part." *Id.* Since each of the defendants, including Richardson, are named separately and each are only part of a larger enterprise, which is not itself named as a defendant, the Court finds that the pleadings satisfy the requirements of this Circuit.[6]

### B. The Continuity Requirement

Richardson and the Brokers argue that the RICO claim is deficient since no continuing enterprise has been alleged. The Customers respond that the allegations set forth an eighteen month scheme involving two brokerage houses, six victims and four accounts at each brokerage house. The Customers also urge that the scheme threatened to continue into the future.

In *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), the Supreme Court noted that Congress did not intend the RICO sanctions to reach "sporadic activity" and decided that two unrelated predicate acts did not constitute a pattern. Instead, there must be "more than one 'racketeering activity' and a threat of continuing activity ..." *Id.* The application of the "continuity plus relationship" requirement of footnote 14 has spawned a somewhat confusing array of decisions in this Circuit. *See Furman v. Cirrito*, 828 F.2d 898, 908 (2d Cir.1987) (Platt, J., dissenting); *see generally Beauford v. Helmsley*, 843 F.2d 103 (2d Cir.1988), *reh'g en banc pending* (argued June 13, 1988) (discussing the "confusing" course of decisions in the Second Circuit).

Viewing this now-famous footnote as dictum, the Second Circuit first decided that the "continuity plus relationship" factor required by *Sedima* could best be determined by examining the enterprise element. *United States v. Ianniello*, 808 F.2d 184, 190 (2d Cir.1986), *cert. denied sub nom. Cohen v. U.S.,* ––– U.S. –––, 107 S.Ct. 3229, 97 L.Ed.2d 736, and *cert. denied,* –––

---

**6.** Though Richardson did not raise the issue, the Court is troubled by the fact that the "enterprise" here is nothing more than a corporation associated in fact with its own employees. In explaining that a RICO "person" must be distinct from the "enterprise", the Seventh Circuit stated that "it is not obvious that the problem can be resolved by merely alleging that the corporation and its employees constitute an association in fact." *Haroco, Inc. v. American National Bank and Trust Co. of Chicago*, 747 F.2d 384, 401 (7th Cir.1984), *aff'd* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *see also United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982) (the court reasoned that allowing the enterprise to be the same as or part of the defendant-person would be similar to asserting that "a defendant could conspire with his right arm, which held, aimed and fired the fatal weapon"), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).

On the other hand, this Court recently stated, also in dictum, that the defendant-"person" was not the same as the "enterprise" because "the alleged enterprise is not the corporation but instead is an 'association in fact' of the corporation and several employees." *Metzner v. D.H. Blair & Co., Inc.*, 663 F.Supp. 716, 722 (S.D.N.Y. 1987) (Weinfeld, J.). Without actually discussing it, the Court appears to conclude that a corporation and one or more of its employees may associate together such that they form a RICO enterprise. *See also Robinson v. Kidder, Peabody & Co.*, 674 F.Supp. 243, 248 (E.D.Mich. 1987) (if enterprise consisted of corporation and one of its brokers, corporation would not be same as enterprise and could be a defendant).

U.S. ——, 107 S.Ct. 3230, 97 L.Ed.2d 736 (1987). The *Ianniello* Court stated that "an enterprise with 'a single purpose,' here fraud continuing indefinitely, can provide the basis for a section 1962(c) violation." *Id.* at 191. That Court held that "when a person commits at least two acts that have the common purpose of furthering a continuing criminal enterprise with which that person is associated, the elements of relatedness and continuity which the *Sedima* footnote construes section 1962(c) to include are satisfied." *Id.* at 192.

Following *Ianniello*, the Second Circuit noted that a party pleading RICO need not allege "multiple episodes" to satisfy the "pattern" requirement, but instead must allege the existence of a continuing, ongoing "enterprise". *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 51 (2d Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (scheme to sell U.S. collateral at reduced price found to be "straightforward, short-lived goal"). Based on these requirements, the *Beck* Court decided that allegations of an enterprise that had "but one straightforward, short-lived goal" did not satisfy the pleading requirements. *Id.* Subsequent decisions reaffirmed that schemes having an "obvious terminating goal or date", *Albany Ins. Co. v. Esses*, 831 F.2d 41, 44 (2d Cir.1987) (inducement of insurer to pay false claims not continuing), or involving multiple fraudulent acts done "in pursuit of a single short-lived goal", *Creative Bath Products, Inc. et. al. v. Connecticut Gen. Life Ins. Co.*, 837 F.2d 561, 564 (2d Cir. 1988) (three fraudulent representations to induce sale of four insurance policies lacked requisite continuity), do not satisfy this Circuit's requirements for pleading a RICO enterprise. *See also Furman, supra,* 828 F.2d at 903 (a continuing enterprise was not alleged since the alleged enterprise, a partnership, had dissolved as a result of an alleged fraudulent sale). While the *Albany* Court spoke of a need to allege that the illicit conduct threatened to continue in the future, 831 F.2d at 44, the *Creative Bath* Court described a requirement for continuing illicit goals or activities, 837 F.2d at 564. After considering these opinions, this Court has stated that "fraudulent or otherwise unlawful schemes which are discrete in time or purpose have been held not to establish a RICO enterprise, even though a number of predicate acts were involved over a period of time." *Lowenbraun v. L.F. Rothschild,* 685 F.Supp. 336, 339 (S.D.N.Y.1988) (Kram, J.).

After reviewing the development of the "enterprise" pleading requirements from *Ianniello* through the present, the Second Circuit recently stated: "we require continuity in any event, and find insufficient evidence of continuity in a single criminal episode regardless of how many fraudulent acts it entails." *Beauford, supra,* 843 F.2d at 110. The Second Circuit reads the post–*Ianniello* cases to mean that "a single criminal episode or scheme does not charge a claim under RICO because it lacks sufficient continuity to constitute an enterprise, even if its fraudulent acts constitute a pattern." *Id.* (appearing to reject the language in *Beck, supra,* 820 F.2d at 51, that plaintiff need not allege more than one "episode" to satisfy the continuity requirements). The *Beauford* Court concluded that "a discrete, even if widespread, and a continuing even if finite, scheme" is not sufficient "to permit a plaintiff to take advantage of RICO." 843 F.2d at 110. It now appears, in light of *Beauford,* that RICO pleadings must allege at least two related predicate acts committed in furtherance of more than one illegal "episode" through an ongoing, continuous and illegal "enterprise".[7]

■ Richardson and the Brokers argue that the scheme alleged by the Customers is not one which meets the continuity requirements of this Circuit. This Court

---

**7.** This Court notes that although the Second Circuit is in the process of reconsidering its *Beauford* opinion, the conclusions stated therein are still binding. In addition, since this Court has twice held in the past that a churning scheme, including acts constituting fraudulent inducement, does not state a claim under RICO, *see Lowenbraun, supra,* and *Siegel, supra,* the Court would be inclined to find that the allegations made by the Customers would not state a RICO claim even in the absence of the *Beauford* decision.

agrees. First, though the Customers have alleged that the illegal activities of the enterprise threatened to continue in the future, it is clear that Richardson itself made the decision to liquidate the accounts and end the alleged illegal scheme. Relying on *Ianniello,* the Customers argue that the churning scheme in this case, as alleged, had no operative terminating goal or date. As described above, however, the *Ianniello* decision has been recently called into question, and it is no longer sufficient to allege merely that a single scheme to defraud threatened to continue into the future; instead, *Beauford* instructs that more than one episode must be alleged to satisfy the continuity requirement. Despite the length of the pleadings, they only allege a discrete, though involved, scheme to defraud one, though large, family of its investment assets through a pattern of racketeering activity over the course of eighteen months. The discrete nature of this single scheme to defraud the members of one family does not allege a RICO pattern or enterprise sufficiently. *See Vereins–Und Westbank AG v. Carter,* 639 F.Supp. 620, 625 (S.D.N.Y.1986) (multiple predicate acts perpetrated as a "package" to further isolated unlawful transaction do not satisfy continuity requirement). The Court notes the absence in the pleadings of any allegations suggesting that similar schemes involving other customers has or is likely to occur. *See Lowenbraun, supra,* at 339.

Second, this Court recently decided that an allegation of a scheme to churn a single securities account, without more, did not satisfy the continuity requirement. *Lowenbraun, supra.* In *Lowenbraun,* the plaintiffs alleged that the defendants fraudulently induced them to open an investment account with Rothschild, a brokerage house, and to purchase certain securities in order to churn the account. This Court rejected plaintiffs' argument that churning in the course of 119 transactions, combined with monthly statements mailed to plaintiffs and certain other fraudulent acts, satisfied the continuity requirement. The Court reached its conclusion in part because it feared that a contrary holding would turn every churning claim into a RICO claim, thus applying RICO to situations in which only "sporadic [illegal] activity" was involved. *Id.* at 340.[8]

Since *Beauford* requires that more than one criminal episode must be alleged, the logic of the decision in *Deviries v. Prudential–Bache Securities,* 805 F.2d 326, 329 (8th Cir.1986) becomes applicable in this Circuit. That court found that a six-year scheme to induce plaintiff to invest with Prudential–Bache and to churn his account did not satisfy the "pattern" requirement of continuity plus relationship as set forth in *Sedima.* 805 F.2d at 329. The court went on to say that it "places a real strain on the language [of the statute] to speak of a single fraudulent effort, implemented by several fraudulent acts, as a 'pattern of racketeering activity'." *Id.* (quoting *Supe-*

---

**8.** It should be noted that courts in this district have reached contrary decisions as to whether a properly alleged churning scheme may satisfy the continuity requirements. *Compare Cruse v. Equitable Securities,* 678 F.Supp. 1023, 1033 (S.D.N.Y.1987) (relying on *Levine, infra,* and *Rush, infra,* the Court decided that the churning scheme met continuity requirements); *Levine v. Merrill Lynch,* 639 F.Supp. 1391, 1396 (S.D.N.Y. 1986) (in dictum, Court found allegations of churning adequate); *Rush v. Oppenheimer,* 628 F.Supp. 1188, 1200 (S.D.N.Y.1985) (court found that scheme involved multiple acts amounting to ongoing scheme); *with Newman v. L.F. Rothschild,* 677 F.Supp. 146, 147 (S.D.N.Y.1987) (24–month churning scheme not "continuing" under *Beck* analysis); *Siegel v. Tucker, Anthony and R.L. Day, Inc.,* 658 F.Supp. 550, 554–555 (S.D.N.Y.1987) (churning scheme with one cus-

tomer not "continuing"). Courts in other districts have also reached contrary results. *Compare Robinson v. Kidder, Peabody,* 674 F.Supp. 243, 246 (E.D.Mich.1987) (citing *Smith v. Oppenheimer,* 635 F.Supp. 936 (W.D.Mich.1985); *Bale v. Dean Witter Reynolds,* 627 F.Supp. 650 (D.Minn.1986); *Nunes v. Merrill, Lynch,* 609 F.Supp. 1055 (D.Md.1985); *Binkley v. Sheaffer,* 609 F.Supp. 601 (E.D.Pa.1985); and *Roche v. E.F. Hutton,* 603 F.Supp. 1411 (M.D.Pa.1984)); *with Deviries v. Prudential–Bache Securities,* 805 F.2d 326, 329 (8th Cir.1986) (reasoning that more than one "fraudulent scheme" must be alleged); *Winer v. Patterson,* 663 F.Supp. 723, 726 (D.N.H.1987) (plaintiff's allegation of five-year churning scheme, with over 200 transactions, did not allege the continuing activity required by *Sedima* ).

*rior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986)). The absence of allegations of more than one "scheme" proved fatal to the complaint. *Id.*

While the alleged illegal scheme involved more actors and more deceptions and distortions than were present in *Lowenbraun,* these various acts were merely the necessary component parts of the single churning scheme. The Customers allege that by fraudulent means Wu continuously induced Michael and Daniel Lau to authorize trades beyond their financial ability, to make trades in the names of relatives without their authorization, and to borrow money to meet margin calls, including an attempt by Wu to get Michael Lau to borrow money from his father in order to avoid liquidation of the accounts. In addition, Wu allegedly misled Michael and Daniel Lau in a variety of other ways, including making them believe they had the authority to transfer the accounts from Bache, to open accounts in the names of their relatives, to trade in those accounts and to give Wu discretionary control over the accounts. These acts, however, add up if true to only "a single criminal effort, executed by criminal acts that are merely ministerial, ..." *Franklin & Jos. v. Continental Health Industries,* 664 F.Supp. 719 (S.D.N.Y.1987) (adopting a restrictive reading of the pattern requirement), and thus do not constitute a RICO violation. *See Siegel, supra,* 658 F.Supp. at 555 (deciding that churning scheme was simply one scheme divided into various ministerial acts, and was thus not RICO). Using the language of the *Beauford* decision, "a single criminal episode or scheme does not charge a claim under RICO because it lacks sufficient continuity to constitute an enterprise, even if its fraudulent acts constitute a pattern." 843 F.2d at 110. For these reasons, this Court finds that the Customers have not sufficiently alleged a continuing RICO enter-

prise. Accordingly, the RICO claim is dismissed.[9]

## II. Pleading Fraud with Particularity

 Richardson and the Brokers argue that the commodities fraud claim, the common law claim and the mail and wire fraud claims are defective because the Customers have not alleged the acts of fraud with the particularity required of Rule 9(b). Rule 9(b) requires that

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The particularity requirement exists primarily to protect defendants from frivolous suits. Specifically, Rule 9(b) exists to give the defendant in a fraud action "fair notice of what the plaintiffs' claim is and the grounds upon which it rests." *Ross v. A.H. Robins,* 607 F.2d 545, 557 (2d Cir. 1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) (citations omitted). Allegations in a fraud complaint must specify the time, place, speaker, and the content of the alleged misrepresentations. *DiVittorio v. Equidyne Extractive Industries, Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987); *see Howard v. Galesi,* [Current Developments] Fed.Sec.L.Rep. (CCH) ¶ 93,412 at 97,141–42 (S.D.N.Y. October 5, 1987) [available on WESTLAW, 1987 WL 18460].

In a case such as this one, with multiple defendants, Rule 9(b) requires that each defendant receive particularized notice of his alleged participation in the alleged fraud. *DiVittorio, supra,* 822 F.2d at 1247; *Wolff Office Equipment v. Wang Laboratories,* No. 87 Civ. 1498 (SWK), slip op. (S.D.N.Y. November 18, 1987) [available on WESTLAW, 1987 WL 26844] (fraudulent acts must be connected to particular defendant); *SEC v. Cable/Tel Corp.,* 90

9. Plaintiff and the Brokers also argue that Richardson, Hirai, DiGiacomo and Da Biero are not proper RICO "persons" since the Customers seek to impose only vicarious liability on them for the allegedly unlawful acts of Wu. The Customers argue, on the other hand, that each of the named parties is liable under RICO since each have been alleged to have committed criminal acts in furtherance of the unlawful goals of the enterprise. The Court need not reach this question since the RICO claim is dismissed.

F.R.D. 662, 664 (S.D.N.Y.1981) (blanket reference to "defendants" insufficient). Richardson and the Brokers argue that the pleadings do not give the requisite notice to each defendant of their participation in the alleged fraud, and do not allege the alleged commodities fraud, common law fraud and mail and wire fraud with the requisite particularity.[10]

A. Participation in the Alleged Fraud

 This Court agrees with Richardson and the Brokers that the pleadings do not adequately specify the role each of the alleged actors played in the fraudulent scheme. While Wu's actions and relationship to the Customers is alleged with particularity, the same is not true for Richardson and the other brokers. The Customers argue that they have been careful to specify only certain brokers in each of the paragraphs of the pleadings so as to identify the role each broker played. While it is true that certain of the brokers' names are excluded in various paragraphs, it is also true that the pleadings merely list the brokers' names, often along with that of Wu, without specifying what role each of them played.

The Customers allege that: (1) Da Biero, DiGiacomo and Wu led Michael and Daniel Lau into depositing monies even though Richardson and all the Brokers, except Hirai, knew that they did not have proper authority to do so; (2) Richardson, Da Biero, DiGiacomo and Wu accepted customer account forms without any verification that the Customers, other than Michael and Daniel Lau, had consented; (3) Richardson and the Brokers allowed trading in the accounts based on faulty or non-existent powers of attorney; (4) Richardson and all the Brokers but Hirai accepted and allowed trading on the joint account without Wai Yau Chi's signature; (5) Richardson, DiGiacomo, Da Biero and Wu approved customer applications on which Wu knowingly and falsely acknowledged that each was an experienced commodity trader with whom the risks of commodity trading had been discussed; (6) Richardson, DiGiacomo and Da Biero permitted Wu to exercise full discretionary control over the account's in violation of Richardson's written policy; (7) Richardson, DiGiacomo, Da Biero, Hirai and Wu consciously avoided advising the Customers of mounting losses; (8) Richardson, DiGiacomo, Da Biero, Hirai and Wu reported the account activity on four separate statements with the intention of concealing the magnitude of risk taken and losses incurred, knowing that the four accounts were treated by Wu as one; (9) Richardson and the Brokers failed to attempt to confirm the financial information in the customer applications or the authenticity of the powers of attorney despite mounting losses; (10) Richardson disbursed monies to Michael and Daniel Lau which they used to reduce a loan taken to make margin calls, even though Richardson had on file trading authorizations which did not grant it the power to disburse these monies; (11) neither Richardson, DiGiacomo or Hirai ever notified Mui Hin Lau, Ho Sih Fong or Kau Ying Lau at their residences outside the United States when their accounts were liquidated; and (12) Richardson and the Brokers intentionally sent daily confirmations and monthly statements to an address at which they knew the Customers, other than Michael Lau, his wife or Daniel Lau, would get notice.

Richardson is alleged to have acted alone in only three of 286 paragraphs. And in those three, Richardson is alleged to have made payments (Amended Answer ¶ 152), delivered checks (*Id.* ¶ 153), and liquidated the accounts (*Id.* ¶ 157). It is not clear how these acts, as distinguished from all the others, can be attributed to Richardson as opposed to Wu or even one of the other brokers. Richardson's name is simply appended to a list of names, making its role in the alleged scheme unclear.

In addition, nowhere in the voluminous pleadings do the Customers allege facts to support their conclusion that it was Richardson's policy to encourage or even over-

---

**10.** The Court does not reach the mail and wire fraud question since the RICO claim is dis- missed.

look the alleged fraudulent acts. Based on the pleadings, the fraudulent scheme may have worked to Richardson's financial detriment. While the Customers allege that all the Brokers, and Richardson itself, stood to benefit from the generation of excessive commissions and increased business, the pleadings do not state who received the commissions and how much excessive profit was made. Since the alleged excessive commissions amount to approximately $55,000, while the alleged margin losses incurred by Richardson amount to approximately $167,000, it is quite possible that Richardson itself was the victim of the alleged illegal conduct of its employees.

The allegations as to the individual brokers, other than Wu, suffer similarly. The other brokers were Wu's immediate supervisors and are alleged to have failed to supervise her properly and to have participated in the fraudulent scheme at various times. None of the other brokers are alleged to have done anything on their own, but are always listed in a group. The pleadings do not indicate that the brokers other than Wu ever had any contact with any of the Customers, nor do they indicate what role each of them played in devising the scheme or executing it. Since the pleadings do not adequately distinguish between the acts of each, they fail to give adequate notice as to the charges leveled against each of them and accordingly fail to meet the strict requirements of Rule 9(b).

### B. The Churning Allegations

■ Richardson and the Brokers also argue that the Customers have not plead the churning acts with the requisite particularity. In order to state a claim for churning, the pleadings must allege (1) that trading was excessive in light of the investor's investment objectives; (2) that the broker exercised control over the account; and (3) that the broker acted with intent to defraud or with willful or reckless disregard for the interests of his client. *Siegel v.*

*Tucker, Anthony and R.L. Day, Inc.,* 658 F.Supp. 550, 553 (S.D.N.Y.1987) (citing *Levine, supra,* 639 F.Supp. at 1394) (both cases involved securities). The Customers have clearly alleged these facts, at least as to the activities of Wu.

■ In addition, for Rule 9(b) purposes, the pleadings must also "set forth (1) the nature, amount and date of the [transactions involved], (citations omitted), (2) and facts sufficient to permit the calculation of the turnover rate of the account and/or the percentage of the account value paid in commissions, (citations omitted). *Id.* at 554. Although it is not necessary to set out each and every transaction deemed excessive, the pleadings as a whole must indicate that the brokers churned the account. *Id.* The Customers have identified the nature of the commodities in question and have given some broad figures as to the amount of initial investment and ultimate losses. They have indicated the amount of the allegedly excessive commissions, but have not clearly indicated what percentage of the account value that comprises for each of the accounts.[11] In addition, the pleadings do not indicate the turnover rate. The Court finds the churning allegations deficient in this respect. For these reasons, both the commodities fraud and common law fraud claims are dismissed, though without prejudice to replead within 60 days of this order. The amended pleadings should state with more particularity and clarity the role each of the Brokers and Richardson is alleged to have played.

### III. Dismissal of Certain Counts by Consent

The third-party complaint includes one count for breach of contract against the Brokers and three counts for money had and received against the Brokers. Richardson and the Brokers move for their dismissal since these counts are only directed against Richardson, not its employees. The Customers have consented to their dis-

---

**11.** The Customers state that the Michael Lau made payments to the accounts greatly in excess of the account holder's stated net worth and annual income. These do not seem to permit a determination of the relevant percentages.

missal. Accordingly, count 4 and counts 11 through 15 of the third-party complaint are dismissed.

## IV. Money Had and Received

■ Richardson seeks to dismiss for failure to state a claim the Customers' four counterclaim counts for money had and received and one count for the same claim in the Daniel Lau Complaint, or in the alternative, requests the Court to order a more definite statement of these counts pursuant to Rule 12(e) on the grounds that the pleadings are too ambiguous to allow for a proper responsive pleading.

New York law recognizes a claim for money had and received, which allows a party to bring an action to recover money received by another by mistake, "at least where the transaction is executed and recovery is sought of money paid under a contract." *Forrest v. Fuchs*, 126 Misc.2d 8, 481 N.Y.S.2d 250, 252 (N.Y.Supr.1984) (citations omitted). Since the pleadings do not allege that Richardson received the monies in question by mistake, the Customers have failed to allege this cause of action. Counts ten through thirteen of the amended answer and count seven of the Lau Complaint are accordingly dismissed.

## V. The Lau Complaint Motions

Richardson has moved for summary judgment on counts four, five and eight of the Daniel Lau Complaint, which assert claims for breach of contract, breach of fiduciary duty and negligence/gross negligence. Richardson also moves for dismissal or summary judgment on count six of the Lau Complaint, which asserts a claim for conversion.[12] Richardson requests that the Court impose sanctions on the Customers on the basis that these claims are clearly frivolous.

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). In testing whether the movant has met this burden, the Court must resolve all ambiguities against the movant. *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1187 (2d Cir.1987) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The movant may discharge this burden by demonstrating to the Court that there is an absence of evidence to support the non-moving party's case on which that party would have the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party then has the burden of coming forward with "specific facts showing that there is a genuine issue for trial." Rule 56(e). A non-moving party who has the burden of proof on an issue may not simply rely on the pleadings, but must make its showing be reference to "specific facts" in the affidavits or the "depositions, answers to interrogatories, and admissions on file." *Celotex, supra,* 477 U.S. at 324, 106 S.Ct. at 2553.

### A. Breach of Contract

■ Richardson argues that Daniel Lau cannot maintain an action for breach of contract since he never had a contractual relationship of any kind with Richardson. In order to maintain an action for breach of contract, Daniel Lau must allege the existence of a contract and its breach. *Nordic Bank PLC v. Trend Group, Ltd.*, 619 F.Supp. 542, 561 (S.D.N.Y.1985).

In support of Richardson's motion, the Vice President of Richardson, Anthony Ishmael, states in an affidavit that Daniel Lau never had an account with Richardson.

**12.** In this same Notice of Motion, Richardson seeks dismissal of the commodities fraud, RICO, common law fraud and money had and received claims which were incorporated into the Lau Complaint. These claims are dismissed in accordance with the discussion of each of these issues above.

Ishmael Affidavit at ¶ 2. Ishmael also states that he "supervised a thorough search of Richardson's records, and have found no records to indicate that Richardson ever had any contractual relationship with Daniel Lau ..." *Id.* Daniel Lau argues that he has alleged facts which indicate that Richardson had an ongoing business relationship with him, including the opening of the Fong account, the making of deposits and margin calls and the eventual conducting of most of the business for the Richardson accounts. Daniel Lau argues that Richardson must have had a contractual relationship with someone and that the course of dealing suggests that Richardson maintained its contacts with Michael and Daniel Lau. Daniel Lau points to testimony given by Wu at an evidentiary hearing before the Court in which she testified that she considered all the accounts to be one family account and that she received instructions on these accounts from Daniel Lau. *See* Testimony of Wu, Dec. 16, 1986, at pp. 137–38 and Jan. 27, 1987, at pp. 141, 169. Daniel Lau also testified that he understood that the accounts were to be treated as one for the benefit of the Lau family as a whole and that Wu was his account advisor. *See* Testimony of Daniel Lau, Feb. 2, 1987, at pp. 257, 265.

Lau has not met his burden. While he may have had some type of ongoing relationship with Richardson, none of the referenced testimony establishes that Daniel Lau ever had a *contractual* relationship with Richardson. For this reason, Richardson's motion on this claim is granted.[13]

## B. Breach of Fiduciary Duty

 Richardson argues that it never had a fiduciary relationship with Daniel Lau. A fiduciary relationship "is one founded upon trust or other confidence reposed by one person in the integrity and fidelity of another, ..." *Di Maio v. State of New York,* 135 Misc.2d 1021, 517 N.Y.S. 2d 675, 678. The relationship requires that "[n]either party may exert influence or

pressure upon the other or take selfish advantage of the trust in such a way as to benefit himself or prejudice the other." *Id.* A breach of fiduciary duty has occurred when influence has been acquired and abused and when confidence has been reposed and retained. *Penato v. George,* 52 A.D.2d 939, 383 N.Y.S.2d 900, 904 (2d Dept. 1976).

 As this Court recently stated in *Lowenbraun, supra,* at 343:

A broker who has discretionary powers over an account owes his client fiduciary duties, and shares a principal-agent relationship with the client. *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 45 (2d Cir.1978), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978); *Jacksich v. Thomson–McKinnon,* 582 F.Supp. 485, 502 (S.D.N.Y.1984); *Bosio v. Norbay Securities, Inc.,* 599 F.Supp. 1563, 1570 (E.D.N.Y.1985). Churning a client's account—which involves abusing the position as broker-agent to gain profits at the client's expense—would certainly involve a breach of the fiduciary duties owed. *See Van Alen v. Dominick & Dominick, Inc.,* 441 F.Supp. 389, 402 (S.D.N.Y.1976), *aff'd,* 560 F.2d 547 (2d Cir.1977).

The Customers have pointed to facts in the record which suggest that Wu had a fiduciary relationship with Daniel Lau, thus creating a material issue of disputed fact. As stated above, Wu testified that she treated the accounts as one and dealt with Daniel Lau in relation to the business of those accounts. In turn, Daniel Lau testified that he believed Wu was his advisor for the accounts and that she was acting for the financial health of the family. Accordingly, Richardson's summary judgment motion on count 5 is denied.

## C. Negligence/Gross Negligence

 Richardson argues that Daniel Lau cannot maintain an action for negligence since neither Richardson nor any of the

---

**13.** The Customers argue that summary judgment is not appropriate since they may plead in the alternative, citing Rule 8(e)(2). While pleading in the alternative is allowed, on a motion for summary judgment the non-moving party must come forward with proof to support its claims.

Brokers had a duty of care toward Daniel Lau. A negligence action requires pleading and proof to support the following elements: (1) the party charged owed the injured party a cognizable duty of care, (2) the party charged failed to discharge that duty and (3) the injured party suffered damage as a proximate result of such failure. *Mechigian v. Art Capital Corp.*, *supra*, 612 F.Supp. 1421, 1429–30 (S.D.N.Y. 1985) (citing *Donohue v. Copiague Union Free School District*, 64 A.D.2d 29, 407 N.Y.S.2d 874, 877 (2d Dept.1978), *aff'd*, 47 N.Y.2d 440, 418 N.Y.S.2d 375, 391 N.E.2d 1352 (1979)).

Lau has alleged that Richardson and the Brokers acted with negligence and gross negligence in relation to the performance and non-performance of their duties regarding the opening, maintaining, supervising, trading and reporting on the accounts at Richardson. Neither the complaint nor the memorandum of law specifies which defendants allegedly owed which duties. All of the allegations generally relate to Richardson's and the Brokers' conduct of their business of trading commodities, however. In *Mechigian,* plaintiff argued that "[t]hose promoting and selling an investment to members of the public have a duty to act with reasonable care in making truthful representations." 612 F.Supp. at 1430. The Court went on to say: "However, plaintiff provides absolutely no support for this proposition ... In sum, I am unwilling to create a duty of care where no sound basis for doing so has been provided." In this case, Lau has provided no argument or cases in support of the negligence claim. Since the law apparently has not in the past recognized a duty of care for securities brokers, this Court is unwilling to create one for commodities dealers under these circumstances. Since the argument focussed on whether the Customers stated a claim the Court will treat this as a Rule 12(b)(6) motion and dismisses this claim for failure to state a claim upon which relief can be granted.[14]

### D. Conversion

■ Richardson seeks dismissal of, or in the alternative summary judgment on, Daniel Lau's claim for conversion. A claim for conversion does not lie unless the alleged victim can establish that he "had legal ownership or an immediate superior right of possession to specific identifiable property ..." *Aetna Casualty & Surety Co. v. Glass,* 75 A.D.2d 786, 428 N.Y.S.2d 246 (1st Dept.1980). The allegation states first that Daniel Lau "title in and the right to possess all funds and securities in the FOUR ACCOUNTS at RICHARDSON" and second that Richardson and the Brokers converted monies belonging to Lau "by transferring, causing the transfer and aiding and abetting the transfer of such funds from BACHE and MICHAEL LAU to RICHARDSON and of such funds from RICHARDSON to MICHAEL LAU and DANIEL LAU." Third–party Complaint at ¶¶ 216–217.

Richardson argues that these pleadings do not state a claim because they allege in substance that Richardson converted Daniel Lau's money by transferring the money to him. This Court agrees that these pleadings appear facially defective. The transfer of money from its owner to its owner does not state a claim for conversion. For this reason, the conversion claim against Daniel Lau is dismissed for failure to state a claim, and the Court does not decide whether summary judgment is appropriate.

### VI. The Jury Demand

Richardson and the Brokers move to strike the jury demand on the counterclaims, the third-party complaint and the Lau complaint as untimely. The Custom-

---

**14.** Though Richardson has prevailed on these motions for summary judgment, the Court does not believe that Rule 11 sanctions are appropriate. The Court did not find that these pleadings were necessarily insufficient or frivolous, merely that the Customers had not properly supported their allegations. While the allegations are at various points inconsistent, pleading in the alternative is allowed, and it is apparent that the Customers were "covering their bases" in what has become, by their own defense, a very complicated action. This Court simply assumes that the Customers at the time of pleading did not know for certain which avenue to pursue.

ers cross-move for an order pursuant to Rule 39(b) permitting a jury trial in the event the Court decides that the jury demand is untimely.

### A. Jury Trial by Right

■ Rule 38(a) preserves the right to trial by jury guaranteed by the Seventh Amendment to the U.S. Constitution, while subparagraph (b) describes the requirements for demanding a trial by jury:

> Any party may demand a trial by jury of any issue triable of right by a jury by serving upon the other parties a demand therefore in writing at any time after the commencement of the action and not later than 10 days after the service of the last pleading directed to such issue.

The failure of a party to serve the jury demand as required constitutes waiver of the right. Rule 38(d). Once the ten-day period has passed, the "parties may then rely on the Rule's explicit terms in presuming that the fact-finder will not thereafter change for the claims raised in the complaint." *Berisford Capital Corp. v. Syncom Corp.,* 650 F.Supp. 999, 1001 (S.D.N.Y. 1987).

In the present case, the Customers could have demanded a jury trial any time after the action commenced in August, 1984, until ten days after service of the answer, which was filed on April 15, 1985. The Customers did not do so and accordingly waived their right to trial on the issues framed by those pleadings. *See Reefer Express Lines v. Arkwright–Boston Manufacturers Insur. Co., Inc.,* 87 F.R.D. 133, 135 (S.D.N.Y.1980) (court held that jury demand waived when party could have made demand but failed to do so).[15]

■ Notwithstanding this waiver, the Customers argue that the amendment of the pleadings and filing of the third-party and Lau complaints revived their right to a jury trial. In this Circuit, amendments to the pleadings revive the right to a jury trial only if the amendments involve new issues or change the original issues. *Berisford, supra,* 650 F.Supp. at 1001 (citing *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1310 (2d Cir. 1973) (en banc); *Western Geophysical Co. of America, Inc. v. Bolt Associates, Inc.,* 440 F.2d 765, 769 (2d Cir.1971)); *American Home Products Corp. v. Johnson & Johnson,* 111 F.R.D. 448, 450 (S.D.N.Y.1986). The essential question to decide therefore is whether the amended pleadings raised new issues such that the right to a jury trial was revived.

■ The Second Circuit has noted that a "new issue" "means something more than the evidence offered and the legal theories pursued, although these are pertinent factors." *Rosen v. Dick,* 639 F.2d 82, 94 (2d Cir.1980). The presentation of a new theory of recovery, especially if they are based on the same facts, "does not constitute the presentation of a new *issue* on which a jury trial should be granted." *Id.* (quoting *Trixler Brokerage Co. v. Ralston Purina Co.,* 505 F.2d 1045, 1050 (9th Cir.1974) (emphasis in original)). For example, altering the character of the relief sought, adding a federal claim to state claims or changing a denial in an answer to an allegation of alternate fact do not raise new issues. *Rosen, supra,* 639 F.2d at 94 (discussing cases—citations omitted). Instead, the amended pleadings must involve new facts not involved in the issues framed by the original pleadings. *Id.* at 94–96. New issues are not raised if they involve "the general area of dispute" raised in original pleadings. *Lanza, supra,* 479 F.2d at 1310.

Richardson argues that all the facts alleged by the amended pleadings were present in the original pleadings, and that the amended pleadings raise no new issues. Richardson points to the Customers' brief to the Second Circuit seeking leave to amend in which they argued that the "issues involved in the trial of the Richardson

---

**15.** The Second Circuit, in considering the Customers' attempted appeal of this Court's denial of leave to amend, observed that "The Laus passed up one opportunity for a jury determination of such issues by failing to make a timely demand for a jury trial of Richardson's claims. See Fed.R.Civ.Pro. 38(b), (d)." *Richardson Greenshields v. Lau,* 825 F.2d 647, 651 (2d Cir. 1987).

Complaint are interrelated to or the same as issues involved in the proposed counterclaims and third-party claims." Lau Appeal Brief at p. 18, *cited in* Brokers' Memorandum of Law in Support, p. 14. In addition, Richardson argues that all of the facts upon which the amended pleadings rely were presented in the Joint Pre–Trial Order signed by the parties and this Court on January 27, 1987, in anticipation of the bench trial on the original complaint brought by Richardson. The Customers argue that the amended pleadings will require the fact-finder to decide new and different issues of fact. They contend that this action is no longer the "collection action" which Richardson brought, but is one in which "the character of the suit" has changed dramatically. *Lanza, supra,* 479 F.2d at 1310. In addition, the Customers assert that the issues raised in the Joint Pre–Trial Order were merely "a list of contentions regarding evidence Customers were arguing was relevant to a case in which they had been precluded from asserting counterclaims. Richardson never conceded that this evidence was relevant to the case which was then before the court by waiving its right to object to the introduction of proof in support of these contentions." Customers' Memorandum of Law in Opposition at pp. 14–15. The Customers also point out that these "contentions" in the pre-trial order do not concern issues of fraud and the elements of the RICO action such as enterprise and racketeering.[16] In sum, the Customers maintain that the new pleadings radically changed the character of the action and revived their right to a jury trial.

 This Court disagrees. While the Customers have expanded the scope of the action by adding seventeen new claims, each of them relates in essence to the questions raised by the original pleadings: who were the actual customers of Richardson and who is liable for the excess in the margin accounts. This Court is persuaded that new issues are not raised by the fact that the issues framed in the original plead-

ings could not be decided without deciding whether the accounts were fraudulently induced, whether the trading was excessive, whether Richardson had the legal right to hold the Customers' assets and whether Richardson breached its contractual obligations with any of the Customers. *Cf. Christenson v. Diversified Builders, Inc.,* 331 F.2d 992 (10th Cir.), *cert. denied,* 379 U.S. 843, 85 S.Ct. 82, 13 L.Ed.2d 48 (1964) (holding that a claim which is separable from the original claims revived the jury right), *cited in Rosen, supra,* 639 F.2d at 96. Since the facts needed to decide the issues framed by the original pleadings are the same as those necessary to decide the claims asserted in the amended pleadings, the Court finds that the Customers' amended pleadings have not raised new issues. Accordingly, the Customers' jury demand in the amended pleadings was untimely.

## B. Discretionary Grant of Jury Trial

The Customers urge this Court to exercise its discretion to grant a jury trial on at least the claims raised in the amended pleadings, if not all the claims. Rule 39(b) states in relevant part that "notwithstanding the failure of a party to demand a jury in an action in which such demand might have been made of right, the court in its discretion upon motion may order a trial by jury of any or all issues." In this Circuit, a judge's discretion has been sharply limited "to determining whether the moving party's showing *beyond* mere inadvertence is sufficient to justify relief." *Noonan v. Cunard Steamship Co.,* 375 F.2d 69, 70 (2d Cir.1967) (emphasis in original); *see also Alvarado v. Santana–Lopez,* 101 F.R.D. 367, 368 (S.D.N.Y.1984) (citing *Noonan*); *Reefer Express Lines, supra,* 87 F.R.D. at 135. The Second Circuit has recently decided that the *Noonan* rule still applies in cases which were initially brought in federal court. *Cascone v. Ortho Pharmaceutical Corp.,* 702 F.2d 389, 393 (2d Cir.1983) (rejecting the lower court's reasoning that the *Noonan* rule should be rejected in all

---

**16.** Whether or not the RICO claims add "new issues" is now irrelevant since those claims are dismissed.

cases); *see Sherwood Apartments v. Westinghouse Corp.*, 101 F.R.D. 102, 103 (W.D. N.Y.1984) (strict mere inadvertence rule still applies in cases initially brought in federal court).

The Customers have wrapped themselves in the Seventh Amendment and shouted like mad, extolling the virtues of trial by jury. Nonetheless, they have not to the Court's satisfaction enunciated any reason, beyond mere inadvertence, to explain why a jury trial was not initially demanded and should now be ordered.[17] For this reason, the Court believes it is constrained to deny the Customers' Rule 39(b) motion.

## VII. Miscellaneous Issues

In their cross-motion, the Customers have requested to conduct additional discovery before repleading any claims which were dismissed without their consent. The Court grants this request in order that the next set of pleadings can be plead with the requisite particularity and will exclude any frivolous allegations. Discovery is reopened in this action for both parties for a period of sixty days at the end of which the Customers should replead.

The Customers have also requested leave to amend the pleadings to include the unspecified claims of Ho Sih Fong in relation to securities allegedly transferred to Richardson in or about May, 1983. Though the Customers have not indicated what claims were to be added, they did provide a copy of a document which indicates that Richardson received some $20,000 worth of stock in Fong's name. The Customers may amend their pleadings to include claims by Fong, consistent with the claims already asserted and consistent with this opinion and order.

## Conclusion

For the reasons stated above, Richardson's and the Brokers' motion (1) to dismiss the RICO claims pursuant to Rule 12(b)(6) is granted, (2) to dismiss the commodities fraud claims and the common law claims pursuant to Rule 9(b) is granted as against

Richardson, Digiacomo, Da Biero and Hirai, (3) to dismiss count 4 and counts 11 through 15 of the third-party complaint is granted by consent, (4) to dismiss counts 10 through 13 of the counterclaims and count 7 of the Lau Complaint is granted, (5) for summary judgment on count 4 of the Lau Complaint is granted, but denied as to count 5, (6) to dismiss counts 6 and 8 of the Lau Complaint for failure to state a claim is granted, and (7) to strike the Customers' jury demand is granted.

The Customers' cross-motion for an order to grant a jury trial is denied. Leave to file an amended complaint, in order to replead the fraud allegations to support the commodities fraud and common law fraud claims, and to add claims by Ho Sih Fong, is granted, but such amended complaint must be filed within thirty days from the date of this order. The Customers' request for further discovery prior to repleading is granted for a period of sixty days. The Customers' amended pleadings should be filed at the end of this sixty-day period.

SO ORDERED.

---

**17.** In support of their request, the Customers cite *Cascone v. Ortho Pharmaceutical Corp.*, 94 F.R.D. 333 (S.D.N.Y.1982), but, as mentioned above, the Second Circuit rejected that Court's analysis which is relevant to this motion. 702 F.2d at 393.